**IT IS ORDERED as set forth below:**

**Date: May 14, 2024**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| Shirley Lett, | CASE NO. 10-61451-BEM |
|     Debtor. | |
| | CHAPTER 7 |
| Shirley White-Lett, | |
|     Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 23-05194-BEM |
| The Bank Of New York Mellon, | |
|     Defendant. | |

**<u>ORDER GRANTING BONYM'S MOTION FOR SUMMARY JUDGMENT</u>**

This proceeding is before the Court on Defendant, Bank of New York Mellon's

("BONYM") Motion for Summary Judgment and Memorandum of Law in Support of Motion for

Summary Judgment (together, the "Motion") filed on February 27, 2024. [Doc. 17]. Plaintiff, Shirley White-Lett ("White-Lett") filed her Response and Cross-Motion for Summary Judgment ("White-Lett's Response") [Doc. 20], and BONYM filed its Reply in Support of its Motion and Response to White-Lett's Cross Motion ("BONYM's Reply") [Doc. 25]. White-Lett filed a Reply. [Doc. 27]. BONYM seeks summary judgment on all claims in the complaint[1], which requests sanctions and damages for alleged violations of the discharge injunction under 11 U.S.C § 524 committed by BONYM and its agents. White-Lett seeks partial summary judgment on the issue of BONYM's liability (the "Cross Motion").

This proceeding is one of multiple actions initiated by White-Lett, both in this Court and in nonbankruptcy forums, relating to the mortgage on her residence. The Court is well versed in the factual background and issues raised by the complaint. White-Lett filed a chapter 7 petition on January 19, 2010, and received a discharge on February 25, 2011. [Case No. 10-61451, Docs. 1, 23]. BONYM is the holder of a note and deed to secure debt on White-Lett's residence.[2] BONYM has used at least three different companies to service the loan: first, Bank of America ("BOA"), which was the servicer prior to and on the date of the discharge order; then, Select Portfolio Servicing ("SPS"), which serviced the loan beginning on November 16, 2013; and finally, Shellpoint Mortgage Servicing ("Shellpoint"), which began servicing the loan in December

---

[1] On the cover sheet of White-Lett's complaint she checks four boxes listing the nature of her suit including causes of action under §§ 542, 523(a)(2), 523(a)(6), and FRBP 7001(9), but she does not plead all four of these causes of action in the complaint. [Doc. 1 at 1]. An adversary cover sheet is an official bankruptcy form, form number 1070, that assists the Clerk with certain reporting requirements. To that end, the second page of the Cover Sheet states, in relevant part: "When completed, the cover sheet summarizes information in the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity. The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court." [Doc. 1 at 2] (emphasis added). Therefore, the allegations and boxes checked on the Cover Sheet do not replace or supplement the filing and service of a complaint or answer and counterclaim.

[2] White-Lett disputes this, but the District Court has affirmed this Court's ruling that White-Lett lacks standing to object to BONYM's proof of claim and is barred by res judicata from challenging BONYM's interest in the note and security deed. [AP 20-6278, Docs. 148, 171, 271, 272); No. 4:22-cv-82 (N.D. Ga.) (the "First Bankruptcy Appeal")].

2016. BONYM's parent company is The Bank of New York Mellon Corporation ("BONYM Corp.").

As relevant here, White-Lett filed AP 20-6031 against BONYM Corp., Shellpoint, and SPS, claiming in part violations of the discharge injunction (the "First AP" or "First Adversary Proceeding"). The claims against BONYM Corp. were dismissed with prejudice by stipulation. [AP 20-6031, Doc. 218]. The Court granted summary judgment to Shellpoint after finding that it did not violate the discharge injunction. [Id., Doc. 119]. The Court found that SPS did violate the discharge injunction. [Id., Doc. 162]. But, after a trial, the Court concluded that SPS lacked knowledge of the discharge injunction and, therefore, was not liable for its violations, and that decision is currently pending on appeal.[3] [Id., Docs. 223, 232]. BONYM was not a party to the First AP.

Also, as relevant here, White-Lett filed AP 20-6278 against BONYM, BONYM Corp., and BOA, claiming in part violations of the discharge injunction (the "Second AP" or "Second Adversary Proceeding"). BOA was dismissed with prejudice by stipulation. [AP 20-6278, Doc. 245]. All claims against BONYM Corp. and BONYM based on alleged violations of the automatic stay or discharge injunction that occurred on or before November 16, 2013 (i.e., while BOA was servicing the loan), were dismissed with prejudice by stipulation. [AP 20-6278, Doc. 244]. Claims related to the lien on White-Lett's residence were also at issue and were resolved against White-Lett in the First Bankruptcy Appeal. [See supra n.2].

In White-Lett's bankruptcy case, BONYM and Shellpoint filed a motion for relief from the automatic stay on July 22, 2022, which was opposed by White-Lett. [Case No. 10-61451, Docs. 99, 100]. The motion sought a declaration that no automatic stay was then in place as to

---

[3] No. 1:23-cv-1717 (N.D. Ga.).

White-Lett's residence or, alternatively, for relief from the automatic stay. The Court entered an order granting the motion and confirming that the stay had terminated on July 20, 2012. [Id., Doc. 108]. That order is currently on appeal (the "Second Bankruptcy Appeal").[4] [Id., Doc. 110].

In this proceeding, White-Lett seeks to hold BONYM liable for damages for violations of the discharge injunction by SPS, which were established in the First AP. In its answer to the complaint, BONYM states that White-Lett's claim is barred by a settlement agreement with BONYM. [Doc. 7 at 5]. The Court held a status conference in this proceeding on February 6, 2024, at which White-Lett and counsel for BONYM were present. At the conclusion of the status conference, the Court entered an order directing the parties to file a copy of the settlement agreement between White-Lett and BONYM, and to file briefs on the issue of whether the settlement agreement bars this proceeding. [Doc. 13]. On February 27, 2024, White-Lett filed her brief. [Doc. 16]. BONYM did not file a brief but filed the Motion instead. White-Lett filed the Cross Motion in response. The Motion and Cross Motion have been fully briefed and are ripe for adjudication.

## I.        SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Fed. R. Civ. P. 56(a), (c); Fed. R. Bankr. P. 7056. The Court will only grant summary judgment when the evidence, viewed in the light most favorable to the nonmoving party shows no genuine dispute of material fact. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). A fact is material if it

---

[4] No. 1:22-cv-3992 (N.D. Ga.).

"might affect the outcome of the suit under the governing law …." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). For issues on which the moving party would bear the burden of proof at trial, the movant "must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all the essential elements of its case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2013). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. *Hairston v. Gainesville Sun Publ'g. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Rather, the nonmoving party must present specific facts supported by evidence that demonstrate there is a genuine material dispute. *Id.*

When, as here with the Motion, "the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by either (1) negating an essential element of the non-movant's case or (2) by showing that there is no evidence to prove a fact necessary to the non-movant's case." *Wynn v. Paragon Systems, Inc.*, 301 F. Supp. 2d 1343, 1349-50 (S.D. Ga. 2004) (citing *Clark*, 929 F.2d at 606-08); see also *Celotex*, 477 U.S. at 323, 325, 106 S. Ct. at 2553, 2554 (stating that Rule 56 does not require "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim" but that the moving party may satisfy its burden by "pointing out to the district court … that there is an absence of evidence

5

to support the nonmoving party's case."); see also *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993).

## II.        UNDISPUTED MATERIAL FACTS

BONYM filed a Statement of Material Facts Supporting Its Motion for Summary Judgment ("BONYM's Statement"). [Doc. 19]. White-Lett filed a Statement of Facts in Opposition to BONYM's Motion for Summary Judgment and In Support of Cross-Motion for Partial Summary Judgment ("White-Lett's Statement") [Doc. 21], and BONYM filed a Response to White-Lett's Statement. [Doc. 26]. In White-Lett's Response, she includes a section titled "Objections to BONYM's Statement of Facts," in which she states that "to the extent [BONYM] offers no facts showing the intent or a meeting of the minds of the parties in forming the settlement agreement and relies solely upon the settlement itself [White-Lett] has nothing further to address as to its statement of facts." [Doc. 20 at 2-3]. Thus, she does not specifically controvert any of the numbered facts in BONYM's Statement, and they are deemed admitted. BLR 7056-1(a)(2). BONYM objected to a number of facts in White-Lett's Statement based on White-Lett's characterizations of documents that speak for themselves or White-Lett's statements about the settlement that are outside the four corners of the Settlement Agreement. White-Lett's conclusory statements are not factual and will not be considered. See BLR 7056-1(a)(1). Based on the Parties' papers, and taking judicial notice of documents filed in White-Lett's bankruptcy case, and in the First AP and the Second AP, the Court finds the following facts are material and undisputed:

White-Lett filed for bankruptcy on January 10, 2010 (Case No. 10-61451) and received a discharge on February 25, 2011; the bankruptcy case was closed in July 2012. [Docs. 19, ¶ 2; 21, ¶ 1-2]. NewRez LLC d/b/a Shellpoint Mortgage Servicing (Shellpoint) began servicing White-Lett's loan for BONYM in December 2016. [Docs. 19, ¶ 1; 21, ¶ 3]. In 2017, White-Lett

filed an action in the Northern District of Georgia titled *White-Lett v. New Penn Financial LLC*, No. 1:17-cv-03385 (N.D. Ga.), and an action in the Cobb County, Georgia, Superior Court (the "State Court Action") titled *White-Lett v. The Bank of New York Mellon*, No. 19-1-723-52 (Ga. Super. Ct. Cobb Cty.), *on appeal* A24A0651 (Ga. App.). [Doc. 19, ¶ 3-4].

In 2020, White-Lett filed the First AP, *on appeal* 1:23-cv-1717 (N.D. Ga.), against BONYM Corp., SPS, and Shellpoint alleging bankruptcy discharge violations from 2013 through 2016 based on 33 monthly statements. [Docs. 19, ¶ 5; 21, ¶ 8]. On January 29, 2021, BONYM Corp. filed a motion for summary judgment in which it argued that it was not the proper party to the litigation. [Docs. 21, ¶ 8; 26 at 9]. BONYM Corp.'s motion for summary judgment was denied on May 6, 2021, because the Court found there are "insufficient undisputed facts before the Court at this time to make a ruling as to a potential agency relationship between the two parties [BONYM and BONYM Corp.] and the ramification of such relationship." [AP No. 20-06031, Doc. 107 at 11]. The claims against BONYM Corp. were subsequently dismissed with prejudice by stipulation. [Id., Doc. 218]. On January 24, 2022, this Court entered an order holding that SPS had violated the discharge injunction by attempting to collect on a discharged debt through sending 33 monthly mortgage statements to White-Lett between 2013-2016. [Docs. 21, ¶ 3; 26 at 4].

Also in 2020, White-Lett filed the Second AP against BONYM and others. [Docs. 21, ¶ 4; 26 at 6]. In the Second AP, the Court entered an order dismissing certain claims against BONYM relating to its proof of claim and its interest in the note and security deed on White-Lett's residence. [AP 20-6278, Doc. 148]. White-Lett appealed the order in the First Bankruptcy Appeal, titled *White-Lett v. Federal National Mortgage Association*, which concerns White-Lett's

challenges to the lien on her residence and not claims for violation of the automatic stay or discharge injunction. (No. 4:22-cv-00082 (N.D. Ga.)). [Doc. 19, ¶ 6].[5]

On July 22, 2022, BONYM, among others, filed a motion for relief from stay in White-Lett's main bankruptcy case which was granted by the Court confirming that the automatic stay in the case had terminated on July 20, 2012. (Case No. 10-61451, Docs. 99, 108) [Docs. 21, ¶ 4; 26; at 6]. White-Lett appealed the order granting the motion for relief from stay to the District Court. (*White-Lett v. The Bank of New York Mellon* (No. 1:22-cv-03992 (N.D. Ga.)) (the "Second Bankruptcy Appeal")).[6] [Docs. 19, ¶ 7; 21, ¶ 7].

On December 13, 2022, BONYM and White-Lett entered into a confidential settlement agreement and release (the "Settlement Agreement"). [Docs. 19, ¶ 8; 18, Ex. A-2]. On December 16, 2022, Shellpoint, as servicer for BONYM, issued a settlement check to White-Lett as part of the Settlement Agreement. [Doc. 19, ¶ 9]. Subsequently, on November 28, 2023, White-Lett filed this adversary proceeding alleging bankruptcy discharge violations from 2013-2016 based on 33 monthly statements sent by SPS while acting as BONYM's mortgage servicer. [Doc. 19, ¶ 10].

## III.      LEGAL ANALYSIS

In the complaint, White-Lett seeks to hold BONYM liable for SPS's violations of the discharge injunction and requests an award of damages on that basis.[7] [Id. at ¶ 29]. BONYM

---

[5] After the Motion and Cross Motion were filed, the District Court entered an order in the First Bankruptcy Appeal affirming the rulings on appeal.

[6] After filing the notice of appeal, White-Lett filed a motion in the District Court in which she sought a stay of this Court's order pending appeal and an injunction to prevent BONYM from foreclosing on her residence. The District Court denied both requests, and White-Lett appealed that denial to the Eleventh Circuit. The Circuit Court affirmed the District Court's ruling denying an injunction and dismissed the appeal of the District Court's ruling on the stay pending appeal. [Case No. 10-61451, Docs. 122, 128]. The District Court has not yet ruled on whether this Court erred in granting the motion for stay relief.

[7] The Court notes that in the complaint, White-Lett also describes how SPS's mortgage statements and the related litigation that she pursued caused her to experience negative health implications; however, these allegations are not

seeks summary judgment on the basis that White-Lett, in the Settlement Agreement, released all claims against BONYM arising from any known or unknown violation of bankruptcy law prior to January 1, 2017, and as a result White-Lett's claims are barred. [Doc. 18 at 1]. White-Lett contends that the Settlement Agreement limits the release of claims against BONYM, such that her claims in this proceeding are not barred. [Doc. 20 at 9].

### A. Contentions of the Parties

BONYM argues it is entitled to summary judgment on White-Lett's claim because the Settlement Agreement is a "definite, certain and unambiguous" contract that should be enforced by this Court. [Doc. 18 at 7-8]. There exists sufficient consideration for the contract because White-Lett obtained releases and also agreed to release all claims set forth therein against BONYM and BONYM Corp. in exchange for a settlement payment of $18,000. [Id. at 7]. BONYM points to Section 5 of the Settlement Agreement as evidence that White-Lett released all claims under bankruptcy law against it that arose prior to January 1, 2017, which includes the claims White-Lett now brings that occurred between 2013 and 2016. [Id. at 9]. Thus, BONYM argues that the Settlement Agreement is a valid contract, supported by the consideration of mutual releases and an $18,000 settlement payment which is binding on BONYM and White-Lett such that White-Lett's claims are barred. [Id. at 8].

In response, White-Lett argues that she only agreed to a "release of BoNYM Corp. (not Shellpoint, SPS, or BoNYM) with regard to any claim she had a right to bring or had pending for violations of the discharge injunction or which was involved in her appeals." [Doc. 20 at 3]. She asserts further that BONYM "side-stepped a meaningful discussion" of Section 7 of the Settlement Agreement which she argues includes terms in Sections 7(b)-(d) that were "designed

---

tied to any legal theory asserted in the complaint but would be a potential consideration if a determination of damages was necessary. [Doc. 1, ¶ 17-22].

to address White-Lett's requirement that her claims or setoffs for violations of the discharge injunction that exist against BoNYM, Shellpoint and SPS, would not be affected by the release" in Section 5. [Id. at 11-12]. Specifically, she argues, that Section 7(d) of the Settlement Agreement was intended to preserve her claims against BONYM for violation of the discharge injunction because prior to the effective date of the Agreement, she had asserted a right to set off any debt owed to her by BONYM against BONYM's proof of claim. Further, she asserts that notwithstanding the Settlement Agreement's explicit terms, she retained the "right and opportunity" to bring a claim for discharge violations and sanctions against BONYM for "purposes of a setoff against BONYM's proof of claim." [Id. at 12]. And, because the main case is not closed, all adversary proceedings remain pending, and the foreclosure sale has not taken place, her current claim against BONYM existed as of the Effective Date per Section 7 so she is not barred from bringing this action. [Id.].

### B.  The Settlement Agreement

The Settlement Agreement states in relevant part:

5. **Borrower's Release of BoNYM and Newrez**. Borrower hereby releases her claims against BoNYM and Newrez as follows.

…

d. **BoNYM Released Matters**. The term BoNYM Released Matters includes all past and present claims against any BoNYM Releasee[8] that relates to violations of bankruptcy law occurring before January 1, 2017. "All past and present claims" includes all claims, counterclaims, actions, defenses, affirmative defenses, rights, causes of action, suits, set-offs, costs, losses, controversies, agreements, promises and demands, or liabilities, of whatever kind or character direct or indirect, whether known or unknown or capable of being known, arising at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, and demands that arose from any alleged violations of bankruptcy law prior to January 1, 2017.

---

[8] "BoNYM Releasee" is defined to include BONYM. [Doc. 18 Ex. A-2 § 5(b)].

e. **Release**. In exchange for the mutual covenants in this Agreement, the Releasors unconditionally and irrevocably release and waive all BoNYM Released Matters. In addition, Borrower covenants not to assert any BoNYM Released Matter in any legal, arbitral, or administrative proceeding against any BoNYM Releasee.

6. **Release of Unknown Claims**. Borrower acknowledges that she may hereafter discover facts different from, or in addition to, those which she now claims or believes to be true with respect to the Parent Corp. Released Matters or the BoNYM Released Matters, and she agrees that this Agreement shall remain effective in all respects notwithstanding the discovery of such different or additional facts. Borrower expressly waives any right to assert hereafter that, because of ignorance, oversight, or error, her releases are not valid with respect to any particular claim. Borrower agrees that this paragraph constitutes a waiver of any statutory provision, right or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law, at law or in equity, that prohibits the waiver of unknown claims.

7. **Release Limitations**. This Agreement does not release the following claims or defenses of the Borrower to the extent that such claims or defenses exist as of the Effective Date:

    a. Any claim Borrower has asserted against BoNYM or Newrez in the District Court Action or the State Court Action.[9]

    b. Any claim Borrower has asserted against Newrez in the First Adversary Proceeding arising out of alleged violations of bankruptcy law on or after January 1, 2017.

    c. Any claims Borrower has asserted in the Litigation[10] against SPS, or against other parties other than BNYM Corp., BoNYM, and Newrez.

    d. Any rights, claims, or defenses at issue in the First Bankruptcy Appeal or the Second Bankruptcy Appeal.

[Doc. 18, Ex. A-2]. The Settlement Agreement also includes, in Section 2, "Payment by BoNYM"

where BoNYM, through Newrez, agreed to pay White-Lett the sum of $18,000 as a settlement

---

[9] In the Recitals section of the Settlement Agreement, the "District Court Action" is defined as *White-Lett v. New Penn Financial LLC,* No. 1:17-cv-03385 (N.D. Ga.) and the "State Court Action" is defined as *White-Lett v. The Bank of New York Mellon.,* No. 19-1-723-52 (Ga. Super. Ct. Cobb Cty.). [Doc. 18, Ex. A-2, Recitals, Section C (2-3)].
[10] In the Recitals section of the Settlement Agreement, all seven lawsuits and appeals (Main Bankruptcy, District Court Action, State Court Action, First Adversary Proceeding, Second Adversary Proceeding, First Bankruptcy Appeal, and Second Bankruptcy Appeal) are collectively referred to as the "Litigation." [Doc. 18, Ex. A-2, Recitals, Section C].

payment ("Settlement Payment") in full satisfaction of the BoNYM Released Matters and Parent Corp. Released Matters. [Id.]. The Effective Date of the Agreement is defined as "the last date identified on the signature page," which is December 13, 2022. [Id. at 1, 11].

### C.  Georgia Law on Settlement Agreements

The law is clear that "[p]rinciples governing general contract law apply to interpret settlement agreements." *Medical Assoc. of Georgia, et al. v. WellPoint Inc*. (*In re Managed Care*), 756 F.3d 1222, 1232 (11th Cir. 2014) (interpreting settlement agreement under Florida law) (quoting *Resnick v. Uccello Immobilien GMBH, Inc*., 227 F.3d 1347, 1350 (11th Cir.2000)). State law governs the interpretation of private contracts. *In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009). "[T]he substantive law of the forum state governs issues of state law that arise in bankruptcy proceedings." *Id.* (quoting *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008)). The Settlement Agreement provides that it will be governed by Georgia law [Doc. 18, Ex. A-2 ¶ 26], and therefore, the Court will apply the law of Georgia to interpret the Settlement Agreement.

Georgia law provides that a

> settlement is, in and of itself, generally construed to be a final disposition of any claim against a party to settlement by a party to the settlement arising out of the subject incident, *unless remaining claims are specifically reserved by any of the parties*. Such compromises are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence.

*City of Demorest v. Roberts & Dunahoo Properties, LLC*, 288 Ga. App. 708, 711, 655 S.E.2d 617, 620 (2007) (emphasis in original). A settlement agreement is subject to the usual rules of statutory construction with the cardinal rule being to determine the intention of the parties; however, no construction is "required or permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." *Id.* at 712. The literal meaning must be applied when the language of the agreement is plain and clear, "despite a party's

contention that he misunderstood the contract to mean something else." *Id.* (citation omitted). "A covenant not to sue is a contract that 'bars the holder of the cause of action … from asserting it against the party or parties with whom he has covenanted.'" *ALR Oglethorpe, LLC v. Fid. Nat'l Title Ins. Co.*, 361 Ga. App. 776, 780, 863 S.E.2d 568, 573 (2021) (quoting *Brantley Co. v. Briscoe*, 246 Ga. 310, 312, 271 S.E.2d 356 (1980)).

Additionally, parol evidence "is not admissible to contradict or construe an unambiguous contract." *Id.* (citation omitted). "The existence or nonexistence of ambiguity in a contract is a question of law for the court." *Safe Shield Workwear, LLC v. Shubee, Inc*., 296 Ga. App. 498, 502, 675 S.E.2d 249, 252 (2009). "This Court possesses the inherent authority to summarily enforce a settlement agreement." *Miles v. Nw. Mut. Life Ins. Co*., 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009) (citing *Ford v. Citizens & Southern Nat'l Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991)). Settlements are favored and will be enforced when possible. *Id.* (citing *Murchison v. Grand Cypress Hotel Corp*., 13 F.3d 1483, 1486 (11th Cir. 1994)). Like all contracts, a settlement agreement must meet the required contractual formalities for enforceability. *LNV Corp. v. Studle*, 322 Ga. App. 19, 22, 743 S.E.2d 578, 580 *adopted*, (Ga. State Ct. 2013).

The Court looks to the plain language of the Settlement Agreement to determine whether White-Lett released the claims against BONYM that she now brings in this proceeding. Section 5 of the Settlement Agreement sets forth what claims were released by White-Lett through the agreement. Section 5(d) plainly states "[t]he term **BoNYM Released Matters** includes all past and present claims against any BoNYM Releasee that relates to violations of bankruptcy law occurring before January 1, 2017" including "all claims, counterclaims, actions, defenses … set-offs … of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, arising at law or in equity, by right of action or otherwise, including, but not limited

to, suits … damages, judgments … that arose from any alleged violations of bankruptcy law prior to January 1, 2017." [Doc. 18-1, Ex. A-2]. As to BONYM, Section 7 excludes from the release claims against BONYM in the State Court Action or the District Court Action and, without reference any specific party, "claims, rights, or defenses at issue" in the First or Second Bankruptcy Appeals. [Id.].

### D.  The Setoff Argument

White-Lett argues that setoff can be a claim or a right, and that it can be a defense or an affirmative defense to a creditor's claim in bankruptcy and cites O.C.G.A. §§ 13-7-1 and 13-7-5 and *In re Bay Circle Properties, LLC*, No. 15-58440, 2020 WL 1671553 (Bankr. N.D. Ga. April 3, 2020) (Hagenau, J.). She argues that, in the Second Bankruptcy Appeal and prior to the effective date of the Agreement, she raised the issue of whether "she was entitled to have deducted from the value of BoNYM's proof of claim, any claim she had against BoNYM to which she was entitled to recover as a setoff before the claim was enforced via foreclosure." [Doc. 20 at 16]. And, even though she "had not yet asserted her claim for such violations [of the discharge injunction] against BoNYM, her right to do so remained at all time under O.C.G.A. § 13-7-1 and O.C.G.A. 13-7-5[.]"

Bankruptcy Code § 558 provides that "[t]he estate shall have the benefit of any *defense* available to the debtor as against any entity other than the estate[.]" 11 U.S.C. § 558 (emphasis added). Section 558 has been construed to include a state law right of setoff. *In re PSA, Inc.*, 277 B.R. 51, 53-54 (Bankr. D. Del. 2002) (interpreting Georgia setoff law); *Bay Circle*, 2020 WL 1671553, at *7 ("Since a party objecting to a proof of claim may assert defenses, 11 U.S.C. § 558, and setoff and recoupment are affirmative defenses, they may be used to reduce [the creditor's] claim[.]"). Furthermore, because the benefit of such defenses is for the estate, it can be

asserted by parties other than the trustee. 5 Collier on Bankruptcy ¶ 558.01[b]. Assuming without deciding that a chapter 7 debtor is within the scope of parties who can assert a § 558 defense on behalf of the estate in the context of a claim objection, then a setoff would be a basis to disallow all or part of a claim.[11]

Under Georgia law, "[b]etween the parties themselves, any mutual demands existing at the time of the commencement of the suit may be set off." O.C.G.A. § 13-7-5. Notwithstanding the description by *Bay Circle* of setoff as an affirmative defense, *"[s]etoff does not operate as a denial of the plaintiff's claim*; rather it allows the defendant to set off a debt owed to him by the plaintiff against the claim of the plaintiff." *Id.* § 13-7-1. As a result, setoff is not a defense, but must be brought as a counterclaim for affirmative relief. *Gynecologic Oncology, P.C. v. Weiser*, 212 Ga. App. 858, 860, 443 S.E.2d 526, 529 (1994); *Stewart v. Stewart*, 236 Ga. App. 348, 349, 511 S.E.2d 919, 920 (1999). Additionally, the right of setoff "may be waived," and such waiver "may be implied from a party's conduct." *Solid Waste Mgmt. Auth. Of Crisp Cty. v. Transwaste Servs., Inc.*, 247 Ga. App. 29, 30, 543 S.E.2d 98, 99 (2000); 20 Am. Jur. 2d Counterclaim, Recoupment, and Setoff § 12.

In *Stewart*, Richard Stewart sued John Stewart in Greene County for misappropriation of assets, and John filed a counterclaim for money due on a note. The parties consented to sever John's counterclaim and transfer it to Hall County. 236 Ga. App. at 919-20, 511 S.E.2d at 348. Richard then sought to assert setoff as a defense in Hall County but was denied, and he could not raise setoff as a counterclaim in Hall County because of the pending lawsuit in Greene County. *Id.* at 920, 511 S.E.2d at 348-49. On appeal, the Georgia Court of Appeals stated

---

[11] It is worth noting in this scenario that even if a claim was disallowed this would only affect distribution rights in the bankruptcy case.

that setoff cannot be raised as a defense, and any "Catch 22" situation Richard found himself in

was of his own making. *Id.* at 349, 511 S.E.2d at 920.

> John Stewart originally filed his claim on the promissory note as a permissive
> counterclaim, but Richard Stewart … filed a motion seeking to dismiss or transfer
> it. A consent order subsequently was entered transferring the counterclaim from
> Greene County Superior Court to Hall County Superior Court. Thus, Richard
> Stewart's own trial strategy was instrumental in creating the procedural dilemma
> which he now faces. A party cannot complain of a verdict, judgment, ruling or order
> that his own legal strategy, trial procedure or conduct aided in causing.

*Id.*, 511 S.E.2d at 920–21. White-Lett is in a similar position as Richard Stewart, as the history of

her litigation in this Court shows.

### E. Effect of Litigation History on White-Lett's Asserted Setoff

On February 6, 2020, White-Lett filed the First AP against BONYM Corp., SPS,

and Shellpoint, alleging violations of the discharge injunction, including the specific violations at

issue in this proceeding. BONYM was not a defendant in the First AP. BONYM Corp.'s answer,

filed on March 13, 2020, denied that it was a creditor of White-Lett and stated that its subsidiary,

BONYM, was White-Lett's creditor, and White-Lett had sued the wrong party. [AP 20-6031, Doc.

10 ¶ 4 & p. 8]. On July 9, 2020, the parties filed a Rule 26(f) Report, which set the deadline for

filing motions to join parties or to amend the pleadings as September 18, 2020. [Id., Doc. 29 ¶

3(b)]. White-Lett did not add BONYM. On May 24, 2022, the parties filed a Consolidated Pretrial

Order that stated: "BNYM Corp. maintains it is not the correct party. … BNYM Corp. proposed a

substitution replacing it with Ms. White-Lett's creditor, but Ms. White-Lett declined, preferring to

sue BNYM Corp. on a theory of respondeat superior." [Id., Doc. 178 at 2-3]. On December 2,

2022, BONYM Corp. and White-Lett filed a Notice of Settlement, followed by a stipulation of

dismissal with prejudice of the claims against BONYM Corp. [Id., Docs. 215, 218].

BONYM filed its proof of claim on October 17, 2020. [Case 10-61451, Claim 1-1]. On December 14, 2020, White-Lett filed the Second AP against BONYM, BOA, and others, asserting among other things an objection to BONYM's claim, and filed an amended complaint on January 4, 2021, to add a claim for violations of the discharge injunction by BOA that occurred between 2010 and 2013. [AP 20-6278, Docs. 1, 9]. The discharge injunction violations at issue in this proceeding were not at issue in the Second AP and were not identified in the original or amended complaint as grounds for objecting to BONYM's claim. On November 29, 2021, the Court entered an order dismissing the objection to BONYM's claim because White-Lett lacked standing. [Id., Doc. 148]. The District Court has now affirmed that White-Lett lacks standing to object to BONYM's claim. [Id., Doc. 271].

On May 20, 2022, White-Lett filed a motion to for leave to amend the complaint in the Second AP and sought to add allegations regarding SPS's violations of the discharge injunction from the First AP and to hold BONYM liable for those violations.[12] [Id., Doc. 200]. The Court denied the motion because the proposed amendments constituted impermissible claim splitting.[13] [Id., Doc. 222]. On July 26, 2022, White-Lett filed another motion for leave to amend the complaint, this time seeking to add a claim against BONYM under the Georgia Fair Business Practices Act ("FBPA") based on violations of the automatic stay and the discharge injunction. [Id., Doc. 224]. In the motion, White-Lett stated that "the violations she asserts constitute setoffs or counterclaims to the Proof of Claim asserted by" BONYM. [Id., Doc. 224 at 3]. The proposed claim was limited to alleged violations of the discharge injunction by BOA. [Id., Doc. 225]. White-

---

[12] Approximately four months earlier, on January 24, 2022, the Court ruled in the First AP that SPS had violated the discharge injunction through its mortgage statements. [AP 2060-31, Doc. 162]. Subsequently on February 27, 2023, the Court ruled that SPS was not liable for its violations because it lacked knowledge of the discharge. [Id., Doc. 223].
[13] "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit" to promote judicial efficiency and fairness for litigants. *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quotation marks and citation omitted). [AP 20-6278, Doc. 222 at 4].

Lett argued that the FBPA statute of limitations did not apply because she was bringing the claim defensively as a counterclaim to the BONYM proof of claim and as a setoff. [Id., Doc. 224 at 4-5]. In denying the motion to amend, by order of October 3, 2022, the Court rejected this argument because the Court had already ruled that White-Lett had no standing to object to BONYM's proof of claim and therefore could not challenge the claim on any basis. [Id., Doc. 236 at 6]. As a result, White-Lett could not avoid application of the statute of limitations by raising the FBPA claim in a claim objection. [Id.]. With respect to setoff, the Court noted that because the BONYM claim is a claim against the estate rather than a claim against White-Lett, mutuality is lacking. [Id., Doc. 236 at 7].

On December 6, 2022, one week before execution of the Settlement Agreement, the claims against BONYM based on violations of the discharge injunction that occurred on or before November 16, 2013, were dismissed with prejudice. [Id., Doc. 245].

On July 22, 2022, BONYM filed its motion for stay relief in the main case. [Case 10-61451, Doc. 99]. On August 1, 2022, White-Lett filed a response opposing the motion, arguing that the Court was divested of jurisdiction over the motion by the First Bankruptcy Appeal because the standing requirements for BONYM to file a proof of claim are identical to the standing requirements for BONYM to file a motion for stay relief. [Id., Doc. 100, at 2-3]. On August 25, 2022, White-Lett amended her response to argue that if the Court found it was not divested of jurisdiction, then granting stay relief to BONYM was premature because she had asserted claims in setoff of BONYM's claim under the FBPA, her damages would likely exceed the amount of BONYM's secured claim, and she may seek extinguishment of the lien.[14] The amended response does not reference the claims brought in the First AP. [Id., Doc. 105]. The Court found that

---

[14] The Court had not yet denied White-Lett's motion to add the FBPA claim in the Second AP, and White-Lett had not yet dismissed her claims against BONYM in the Second AP for BOA's violation of the discharge injunction.

BONYM's standing to file the motion for stay relief raised different issues than those in the First Bankruptcy Appeal, such that jurisdiction was not divested. [Id., Doc. 119]. Furthermore, the Court did not have to decide whether to grant stay relief to BONYM because it found that the automatic stay had terminated by operation of law as to White-Lett's residence.[15] [Id.].

The order granting the motion for relief was entered on September 19, 2022, and White-Lett filed a notice of appeal on October 3, 2022, initiating the Second Bankruptcy Appeal. [Id., Docs. 108, 110]. On November 7, 2022, in the Second Bankruptcy Appeal, White-Lett filed a motion to stay proceedings in the main bankruptcy case pending resolution of the First and Second Bankruptcy Appeals, in which she referred to having "asserted claims in recoupment and setoff to be applied against [BONYM's] secured claim" in the Second AP.[16] [Doc. 22, Ex. 1 at 4, 14]. She stated that she had also filed claims for separate violations of the discharge injunction against Shellpoint and SPS in the First AP, and "[t]he aggregate of damages from the two adversary Proceedings may surpass the value of [BONYM's] lien." [Id., Ex. 1 at 14-15, 18-19].

The claims against BONYM in the Second AP based on BOA's violation of the discharge injunction were dismissed the following month on December 6, 2022. The Settlement Agreement was executed on December 13, 2022. At that time, the Court had not yet ruled on whether SPS was liable for its own violations of the discharge injunction; indeed, the trial on SPS's liability in the First AP was held on December 15, 2022, two days after execution of the Settlement Agreement. Notably, the Settlement Agreement expressly reserved White-Lett's claims against SPS [Doc. 18-1, Ex. A §§ 5(c), 7(c)], going so far as to explain that the "Parties do not intend this

---

[15] The Court notes that in the Second Bankruptcy Appeal, the Eleventh Circuit acknowledged that this Court has already "implicitly reject[ed]" White-Lett's setoff argument when it granted BONYM's motion for relief from the automatic stay. [1:22-cv-3992, Doc. 38 at 8]. As shown herein, the Court's previous implicit rejection of the setoff argument is now explicit.

[16] White-Lett's motion to add the FBPA claim in the Second AP had been denied a month earlier on October 3, 2022.

Agreement to settle or resolve claims [White-Lett] has asserted against … SPS … in the First Adversary Proceeding." [Id., Recitals § I]. This proceeding was filed almost a year later on November 28, 2023. Thus, at the time White-Lett executed the Settlement Agreement, the only time she had raised the issue of BONYM's liability for SPS's violation of the discharge injunction as a possible setoff against BONYM's proof of claim, was in the motion to stay proceedings filed in the Second Bankruptcy Appeal.

To clarify the chronology of events: On January 24, 2022, the Court ruled in the First AP that SPS had violated the discharge injunction. On May 20, 2022, White-Lett filed her motion to amend the complaint in the Second AP to hold BONYM liable for SPS's violations of the discharge injunction; that motion was denied on July 20, 2022, and was not appealed once it became final.[17] On July 22, 2022, BONYM filed its motion for stay relief. On July 26, 2022, White-Lett filed her motion to amend the complaint in the Second AP to add the FBPA claim (alleging setoff rights for the violations alleged to have occurred from 2010-2013). On August 25, 2022, White-Lett filed her amended response to BONYM's motion for stay relief in which she argued that she had asserted an FBPA claim that could be set off against BONYM's proof of claim. On September 19, 2022, the Court granted BONYM's motion for stay relief. On October 3, 2022, the Court denied White-Lett's motion to add the FBPA claim in the Second AP. On November 2, 2022, White-Lett argued to the District Court, and for the first time in any of the proceedings discussed herein, that she had a claim against BONYM for SPS's violations of the discharge injunction that could be set off against BONYM's proof of claim. On December 13, 2022, White-Lett executed the Settlement Agreement. On February 27, 2023, the Court ruled in the First AP

---

[17] As explained by the District Court, all interlocutory orders in the Second AP became final on May 10, 2023, when this Court entered an order dismissing the only remaining unresolved claim in the Second AP. [Docs. 252, 272 at 47 & n.11].

that SPS is not liable for its violations of the discharge injunction. White-Lett filed the current proceeding on November 28, 2023.

In other words, until November 28, 2023, White-Lett had not sought to hold BONYM liable for the discharge violations alleged in the First AP, even though she had been on notice that BONYM was the creditor as early as March 13, 2020, when BONYM Corp. filed its answer in the First AP. Her only previous attempt to bring those claims against BONYM—by seeking to amend the complaint in the Second AP—was denied as violating the rule against claim-splitting.[18] Therefore, White-Lett's argument that she has a remaining right to setoff fails regardless of the language of the Settlement Agreement because she waived any such right of set off by her conduct in the various proceedings discussed in this Order and because the underlying basis for the asserted set off (BONYM's liability for SPS's discharge violations) is barred by the rules of preclusion

### F. Claims Released by the Settlement Agreement

Even if the litigation history between the parties does not bar White-Lett's setoff claim, the Settlement Agreement does. The Settlement Agreement is clear and unambiguous because it explicitly delineates which claims are released and which are reserved by White-Lett. All White-Lett's claims, defenses, affirmative defenses, rights, and setoffs asserted against BONYM[19] arising from alleged violations of bankruptcy law prior to January 1, 2017, are released. [Doc. 18-1, Ex. A-2, § 5(d)]. Further, under Section 7, any rights and claims, or defenses at issue in the First and Second Bankruptcy Appeals are excluded from the release. [Doc. 18-1, Ex. A-2].

---

[18] Thus, even if the Court found in White-Lett's favor as to interpretation of the Settlement Agreement, the claims in this proceeding would still be subject to rules of preclusion.
[19] The Court notes that the Settlement Agreement explicitly states that the BoNYM Releasees do not include claims against SPS. [Doc. 18, Ex. 2-A, § 5(c)].

White-Lett's allegations in the complaint fall squarely within the BoNYM Released Matters in the Settlement Agreement in that White-Lett seeks damages from BONYM for violations of the discharge injunction that took place between 2013 and 2016. Section 5(d) is a very narrow release, relating to a specific type of conduct (violation of bankruptcy law) for a specific time period (before January 1, 2017). White-Lett's reading of the Agreement would effectively nullify the specific language of Section 5(d) with the general language of Section 7(d). If White-Lett had intended to preserve her right to file a claim for violation of the discharge injunction against BONYM by arguing a right of setoff in challenging BONYM's proof of claim, she could have requested such language in the Agreement. After all, the parties did so with respect to SPS by expressly stating in the Recitals of the Settlement Agreement that the parties did not intend to settle White-Lett's claims against SPS in the First AP; that recital can be used to inform interpretation of the release limitations in Sections 5(c) and 7(c).

Additionally, although White-Lett argued to the District Court that she was entitled to set off her claims in the First AP against BONYM's proof of claim, as previously discussed, White-Lett did not raise setoff as a defense or other basis for objecting to BONYM's proof of claim in the Second AP[20] or in any other claim objection. Indeed, in her brief in support of her request that the District Court stay this Court's order on the motion for relief from stay, White-Lett states, "[t]he salient ground asserted for lack of standing on appeal is that the Bank has no legally valid enforcement rights to the underlying Note and Mortgage." [Doc. 21 at 2].

---

[20] To the contrary, in seeking Rule 54(b) certification of the orders denying her objection to BONYM's proof of claim, White-Lett argued that the claims for violation of the discharge injunction are "completely separate and independent" of the objection to BONYM's proof of claim. [AP 20-6278, Doc. 152]. Although the First AP did not involve the same discharge injunction violations at issue in this AP, it did involve alleged violations by BOA as BONYM's servicer.

White-Lett argues further that her claims in this proceeding are not released under Section 5 because they do not relate to "violations under bankruptcy law" but instead are a violation of a court order (the discharge order) only enforceable through a contempt action. She also argues that her claims are preserved by Section 7(d), which provides that the "Agreement does not release the following claims or defenses of the Borrower to the extent that such claims or defenses exist as of the Effective Date: … d. Any rights, claims, or defenses at issue in the … Second Bankruptcy Appeal." White-Lett contends Section 7(d) preserves her claims or setoffs against BONYM for violations of the discharge injunction, even though they had not yet been asserted through a separate motion or adversary proceeding, because they are at issue in the Second Bankruptcy Appeal.

White-Lett's arguments are not supported by the plain language of the Agreement, the context, or the applicable law in the Second Bankruptcy Appeal. First, White-Lett's claims for violation of the discharge injunction do, in fact, involve a violation of the bankruptcy law, specifically, § 524(a)(2), which provides that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]" Therefore, they do fall within the scope of Section 5 of the Settlement Agreement. And even if there were not a statutory basis for the claims, the Bankruptcy Court's discharge order is a form of bankruptcy law and any claims for contempt arising from a violation of such order are claims based on a violation of bankruptcy law.

Additionally, the claims in this proceeding are not at issue in the Second Bankruptcy Appeal. White-Lett appealed this Court's order confirming that the automatic stay was not in effect and identified the issues on appeal as: "1. Whether the court erred in denying Debtor's

Motion to Stay Proceedings[21] [and] 2. Whether the court erred in granting Movant's Motion for

Relief from Stay and/or its motion for determination whether automatic stay was in effect." [Case

No. 10-61451, Doc. 111]. White-Lett contends that in the appeal, she has placed the claims at issue

by arguing "that relief from stay was not permitted until all setoff claims including her claims for

violations of the discharge injunction, had been fully litigated and the awards (if any) had been

deducted from any amount claimed due under BoNYM's proof of claim." [Doc. 20 at 16].

 Although White-Lett includes several pages of discussion regarding her alleged

right to a setoff in the Emergency Motion for Stay in the Second Bankruptcy Appeal, the question

whether she could obtain "monetary relief against [BONYM] for violations of the discharge

injunction and the automatic stay" is not specifically at issue in that appeal. [Doc. 21 at 29].

Instead, White-Lett unequivocally states in the Emergency Motion for Stay "Summary of Relief

Sought" opening paragraph that "Appellant seeks to establish in the instant appeal" that BONYM

"has no standing to seek any relief from the bankruptcy court," thus the Bankruptcy Court "was

without jurisdiction to consider" the issues presented by BONYM in its motion for relief from stay

in the Main Case. [Id. at 18]. Furthermore, although White-Lett referred to both the First and

Second APs in discussing potential setoff in the motion for stay and asked the District Court to

"enter an order enjoining any further attempt by The Bank to enforce its purported lien or foreclose

until **both** adversary proceedings seeking monetary relief from The Bank, its agents or others, has

been finally determined and applied to reduce the amount of the secured claim," [Id. at 28-29

(emphasis in original)], the Court cannot conclude that the issue currently presented in this

proceeding, that is, whether BONYM should be sanctioned for an alleged violation of the

---

[21] The Court notes that White-Lett did not file a separate motion to stay proceedings in the bankruptcy case. However, in her response in opposition to BONYM's motion for stay relief, White-Lett argued that the Court was divested of jurisdiction over the motion because it presented identical issues to those in the First Bankruptcy Appeal, and therefore the motion for stay relief should be stayed pending resolution of that appeal. [Case No. 10-61451, Doc. 100].

discharge injunction through SPS's communications with White-Lett during the period between 2013 and 2016, is an issue before the District Court in the Second Bankruptcy Appeal.

Further, there is no connection between the issue whether the automatic stay has terminated as to White-Lett's residence and any claim White-Lett has against BONYM for violation of the discharge injunction. Termination or modification of the automatic stay does not affect any setoff right White-Lett has against BONYM under nonbankruptcy law nor does it affect the discharge injunction. Additionally, in this case, the Court found that the automatic stay terminated by operation of law when the bankruptcy case was closed. The Bankruptcy Code does not provide an exception to that termination when a debtor is claiming a right of setoff against a creditor or a creditor's proof of claim. The claims asserted by White-Lett in this proceeding are not at issue in the Second Bankruptcy Appeal by any logic, and therefore they were released by the plain language of the Settlement Agreement.

Accordingly, BONYM has shown that White-Lett specifically released the very claims she is presenting now in this proceeding through the Settlement Agreement and is precluded as a matter of law from bringing a claim for an alleged violation of bankruptcy law against BONYM that arose prior to January 1, 2017, as she does here. This issue being a question of law, there is no genuine dispute as to a material fact and BONYM is entitled to entry of summary judgment on all of White-Lett's claims in the complaint, including for sanctions and damages for BONYM's alleged violation of the discharge injunction.

### G. White-Lett's Cross-Motion for Summary Judgment

White-Lett's Cross Motion seeks partial summary judgment on the issue of liability on the basis that (1) SPS violated the discharge injunction; (2) SPS was acting as BONYM's agent when it did so; and (3) BONYM is imputed with knowledge of the discharge injunction because

its previous servicer, BOA, had knowledge of the discharge. Because the Court has determined that White-Lett's claims in this proceeding are barred by the Settlement Agreement, White-Lett's Cross Motion will be denied.

Accordingly, it is

ORDERED that BONYM's Motion for Summary Judgment is GRANTED. It is further,

ORDERED that White-Lett's Cross-Motion is DENIED. It is further,

ORDERED that a separate judgment shall be entered in favor of BONYM.

**END OF ORDER**

## **Distribution List**

Shirley White-Lett
456 North Saint Marys Lane
Marietta, GA 30064

Chandler P. Thompson
Akerman LLP
Suite 550
215 South State Street
Salt Lake City, UT 84111

Heather L. Fesnak
Akerman LLP
401 East Jackson Street
Suite 1700
Tampa, FL 33602